# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3971 | **DATE** | 10/ 20/2003 |
| **CASE TITLE** | Bellavia v. First USA Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Compel Arbitration (doc. # 21)

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial [set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  . Defendant's Motion to Compel Arbitration is GRANTED.  This case is dismissed without prejudice with leave to reinstate at the conclusion of any arbitral proceedings.

(11)  ■  [For further detail see order on the reverse side of the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | **number of notices** | **Document Number** |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | OCT 2 2 2003 | |
| | Notified counsel by telephone. | | | date docketed | 30 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| JHC | courtroom deputy's initials | U.S. DISTRICT COURT | 03 OCT 21 PH 6:0 | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH BELLAVIA, individually and       )
on behalf of all similarly-situated     )
individuals,                            )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )       No. 02 C 3971
                                        )
FIRST USA BANK, N.A.,                   )       The Honorable William J. Hibbler
                                        )
            Defendant.                  )

DOCKETED

OCT 2 2 2003

## MEMORANDUM OPINION AND ORDER

Joseph Bellavia sued First USA Bank, alleging that First USA violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, because it charges an "overlimit fee" to consumers who exceed their credit limit without disclosing this fee as part of the finance charge. Bellavia seeks to bring this action on behalf of the class of First USA credit card customers, although no motion for class certification has been brought. First USA moves to compel arbitration, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* For the following reasons, First USA's motion to compel arbitration is **GRANTED.**

### I. FACTUAL BACKGROUND

First USA enters into credit card contracts with consumers, through which it issues credit cards and extends credit to those consumers. Bellavia opened a credit card account with First USA in December of 1996 and consequently First USA sent Bellavia credit card along with a Cardmember Agreement. The Cardmember Agreement sets forth the terms governing



1

the account and contains a provision that allows First USA to make amendments to the parties' agreement at any time. The amendment provision reads in relevant part:

> We can amend the terms of this agreement at any time. We will notify you of what these amendments are. Subject to the requirements of applicable law, any amendment to this agreement will become effective at the time stated in our notice to you . . . .

In January 1998, First USA amended the terms of the Cardmember Agreement to include a new arbitration provision. The arbitration provision states in relevant part:

> Any claim dispute or controversy ("Claim") by either you or us against the other, . . . arising from or relating in any way to this Agreement or your Account, including Claims regarding the applicability of this arbitration clause or validity of the entire Agreement, shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure in effect at the time the Claim is filed . . . .

At the time First USA added the arbitration provision, it informed Bellavia of the new provision by mailing him a letter that notified him of the changes to the arbitration agreement. The letter further informed Bellavia that he could reject the terms contained in the amended Cardmember Agreement by notifying First USA in writing by February 28, 1998, of his rejection of those terms. As a consequence of rejecting the amended agreement, however, Bellavia's charge privileges would have been terminated and he would be required to pay off any unpaid balance, at which point the parties' relationship would cease. Bellavia declined to reject the amended terms and instead continued to use his credit card after March 1, 1998.

On June 6, 2002 Bellavia filed this complaint, which alleges that First USA violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, by failing to disclose on his credit card statements that the "overlimit fees" that First USA assessed were part of the finance charges. First USA seeks an order compelling Bellavia to submit his claim to arbitration pursuant to

this Cardmember Agreement. Bellavia argues that the arbitration agreement is unenforceable, and thus First USA's motion to compel arbitration should be denied.

## II. DISCUSSION

The Federal Arbitration Act (FAA) provides that a written provision in any contract evidencing an intent to settle by arbitration any future controversy arising out of such contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In considering whether an agreement to arbitrate is unenforceable, the court is mindful that the FAA establishes a "federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d (1991) (one purpose of FAA is to reverse longstanding judicial hostility towards arbitration agreements and place them on equal footing with other contracts); *Volt Info. Sci., Inc., v. Board of Trustees of The Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488 (1989) (same); *Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 556 (7th Cir. 2003) (same). In light of the federal policy favoring arbitration, a party seeking to invalidate an arbitration agreement must establish that the agreement precludes them from effectively vindicating their statutory claim in the arbitral forum. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

Bellavia argues that the arbitration agreement is unenforceable for several reasons. First, Bellavia argues that the arbitration provision limits his rights under the TILA, primarily because NAF rules restrict his right to pursue class relief. Second, Bellavia argues that the NAF is a biased forum and unable to conduct a fair proceeding. Finally, Bellavia argues that

the prohibitive cost associated with arbitration prevents him from effectively asserting his rights. All of the Bellavia's arguments are without merit.

Bellavia argues that the arbitration provision is not enforceable because it restricts his rights under the TILA. In essence, Bellavia launches a generalized attack upon the arbitrability of TILA claims, questioning the NAF's rules governing discovery, default, joinder, and pleading of the claim. But courts have consistently rejected generalized attacks on arbitration that rest upon "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." *See, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989); *Green Tree*, 531 U.S. at 89-90. And Bellavia's specific concern that the arbitration provision interferes with his right to pursue class action relief is without merit. The Supreme Court has rejected the notion that a party's inability to seek class action relief renders an arbitration agreement unenforceable, *Gilmer*, 500 U.S. at 32, and in any event, the TILA does not create a substantive right to litigate a group of claims as a class action. *Thompson v. Illinois Title Loans, Inc.*, No. 99-C-3952, 2000 WL 45493, *3-4 (N.D. Ill. Jan. 11, 2000). Bellavia points to no precedent suggesting that the substantive right he seeks to vindicate —adequate disclosure of credit terms —is not arbitrable, and to the contrary, courts have consistently found that there is no legal impediment to arbitration agreements covering statutory claims arising under the TILA. *See, e.g., Livingston*, 339 F.3d at 556-57; *Large v. Conseco Fin. Serv. Corp.*, 292 F.3d 49, 56-57 (1st Cir. 2002); *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814 (11th Cir. 2001); *Stout v. Byrider*, 228 F. 3d 709, 715 (6th Cir. 2000); *Johnson v. West Suburban Bank*, 225 F.3d 366 (3rd Cir. 2000).

Bellavia's argument that arbitration would undermine his rights under the TILA is without merit.

Bellavia next argues that the arbitration provision is unenforceable because the NAF is biased. Bellavia contends that the NAF cannot be neutral because its principal clients are lenders and other large corporations, like NAF, and thus it has an incentive to support their goals at the expense of the consumer. In support Bellavia points to NAF's marketing pitches and various *amicus* briefs it filed supporting the enforceability of arbitration agreements. Bellavia, however, points to no NAF procedural rule that impedes his ability to receive a fair hearing. Instead, he presumes that because NAF has a relationship with corporate entities, it cannot possibly arbitrate his claim fairly. Bellavia's speculation is unconvincing. NAF allows each party to exercise one peremptory strike of a proposed arbitrator and each party may strike any proposed arbitrator for cause. *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 925 (N.D. Tex. 2000). Furthermore, if the arbitration panel in fact renders an award that is based on arbitrator bias, Bellavia has a remedy — he may seek to vacate that award. *See Smith v. American Arbitration Ass'n*, 233 F.3d 502, 506 (7th Cir. 2000); 9 U.S.C. § 10. Bellavia's claim of bias is further undermined by First USA's offer to invoke NAF Rule 21. Rule 21 allows the parties to select an arbitrator or panel of arbitrators who have no affiliation with NAF. Bellavia objects to using Rule 21 because he claims First USA's attempt to invoke the rule is an "after-the-fact" attempt to fix an unconscionable term of the arbitration agreement because NAF adopted Rule 21 *after* Bellavia filed this suit. But the arbitration agreement provides that the parties shall adhere to the NAF code of procedure "in effect at the time the Claim is filed." Bellavia has filed no arbitration claim, and in any event, First USA did not modify the terms governing the arbitration procedures, NAF did. First USA's willingness to employ Rule 21 to

allow the parties to select arbitrators who are not affiliated with NAF renders moot Bellavia's fear that NAF will provide a biased forum. Bellavia's claim that NAF provides an unfair forum is without merit.

Finally, Bellavia argues that the prohibitive cost associated with arbitration prevents him from effectively asserting his rights. It is true that the Supreme Court has observed that there may be instances in which the high cost of arbitration may prevent a plaintiff from effectively vindicating his rights. *See Green Tree*, 531 U.S. at 90. The Seventh Circuit, however, has interpreted *Green Tree* to require that the party opposing arbitration come forward with individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs. *Livingston*, 339 F.3d at 557. Bellavia offers only generalized evidence regarding the costs of arbitration, and so his claim necessarily fails. Furthermore, Bellavia's final argument is also moot because First USA has offered to pay all arbitration costs. Bellavia again protests that First USA's offer is an attempt to rewrite an unconscionable contract after the fact. But the Seventh Circuit has held that an offer to pay all costs associated with arbitration "forecloses the possibility that [a party] could endure any prohibitive costs in the arbitration process." *Id.*

### III. CONCLUSION

First USA's motion to compel arbitration and is GRANTED. This case is hereby dismissed without prejudice with leave to reinstate after arbitration.

IT IS SO ORDERED.

_10/20/03_
Dated

_Wm. J. Hibbler_
The Honorable William J. Hibbler
United States District Court